**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| MELISSA L. SMITH, | ) | |
|---|---|---|
|         Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 2:13-cv-260-DBH |
| | ) | |
| R.H. RENY, INC., d/b/a RENYS A MAINE ADVENTURE, | ) | |
|         Defendant | ) | |

**DECISION AND ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

The defendant's motion for summary judgment is **Granted** on Count III, and **Denied** on Counts I and II.

The plaintiff Melissa Smith was an employee of the defendant R.H. Reny Inc. ("Renys"). She claims that during her employment a co-worker sexually harassed her. She seeks damages for that harassment in Count I. She also says that Renys constructively discharged her in how it handled her complaint, Count II, and committed a Whistleblower violation by subjecting her to adverse employment action for complaining, Count III.[1]

Because the alleged harassment was by a co-worker rather than by management, Smith must show that Renys "knew or should have known of the

---

[1] In Count III, Smith alleges that Renys subjected her to adverse employment action after she reported that she was sexually harassed. Smith's Complaint entitles Count III "Whistleblower Protection Act" and cites to 26 M.R.S.A. § 833(1)(A) and 42 U.S.C. § 2000e-3(a). Although labeled as whistleblower, I understand the federal claim to be based on a retaliation theory.

charged sexual harassment and failed to implement prompt and appropriate action." Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 230 (1st Cir. 2007).[2] Smith has raised genuine issues of material fact in that regard. Although she has not laid a basis for the admissibility of employment records from a the co-worker's previous employer[3] allegedly showing sexual harassment there, she has presented admissible evidence of a previous complaint by another female employee at Renys and Renys' response to that complaint. Although Renys contends that it properly investigated the previous complaint, a factfinder might conclude otherwise and conclude that Renys' management was on notice of the sexually harassing behavior of the co-worker and failed to take appropriate corrective and protective action. Moreover, Smith earlier complained to an assistant manager about the co-worker's harassment. Although Smith told that assistant manager not to report her complaint, a factfinder might find that by virtue of the assistant manager's knowledge, Renys was on notice of the conduct and should have taken steps to prevent it. (Renys had a policy that required the assistant manager to report the complaint higher and investigate, Plaintiff's Opposing Statement of Material Facts ¶ 32-34 (ECF No. 18), regardless of Smith's entreaty, but she failed to do so.) Thus, on this record I conclude that a factfinder could conclude that

---

[2] Renys does not challenge the other elements of Smith's sexual harassment claim and I do not address them.

[3] She has presented them as an attachment to an affidavit of an unrelated lawyer who says he obtained them pursuant to subpoena in a different lawsuit against Renys. Smith would need the testimony of a business records custodian in order to establish the necessary foundation and authenticate the documents as required by Rule 901 or find some other exception to hearsay and foundation requirements.

Renys knew or should have known of the co-worker's sexual harassment, and I **DENY** Renys' motion for summary judgment on Count I's sexual harassment claim.

Although Renys' motion is stronger on the constructive discharge issue,[4] there is still a question for the factfinder. Smith finally brought her charge to management's attention (beyond the assistant manager) on May 25, 2011, when the co-worker was on medical leave. Smith and her husband met with Renys that day. The co-worker subsequently resigned that very day[5] (while still on medical leave) and never returned to Renys' employment. Smith worked two more days after the May 25 meeting, Plaintiff's Objection to Defendant's Motion for Summary Judgment at 6 (ECF No. 17), then never returned. Renys later wrote her a letter urging her to return. Thus, at first glance it would appear that, with the removal of the harassing co-worker, there could be no case for constructive discharge. But Smith's basis for her claim is cumulative. In addition to the ongoing harassing behavior that she earlier endured, she says that Renys' treatment of the employee who complained earlier (Renys rejected that employee's claim and fired her for defaming the harassing co-worker), along with Renys' treatment of Smith when she finally did present her claim, made it impossible for her to continue working at Renys. Smith points to the following actions that occurred when she complained:

---

[4] Smith calls Count II a claim of "Retaliation/Constructive Discharge." Compl. at 5 (ECF No. 1-2).
[5] Some participants at the meeting surmise that a member of management warned the co-worker of the accusation. That is not part of my rationale in this decision.

- [A]n assistant manager said "Jesus fucking Christ. There's so much drama in this store" and walked away.

- [Another] assistant manager defended [the harassing co-worker] during the May 25th meeting, and said she did not believe that he would do and say the things [Smith] said he had done and said.

- [T]he store manager told [Smith] that she would have to continue working with [the harassing co-worker].

- One of the Renys' managers present at the May 25th meeting tipped off [the harassing co-worker], which allowed him to resign with a clean record.

- Although [Smith] was told that her complaint could just stay with management, it soon became common knowledge in the store that [Smith] had made a complaint against [the harassing co-worker].

- On her second day back after the May 25th meeting, people ignored her, or gave her dirty looks.

- No investigation was ever done into her allegations of sexual harassment.

Pl.'s Objection to Def.'s Mot. for Summ. J. at 14-15.

Although the statement of "common knowledge in the store" and the statement that a manager tipped off the harassing co-worker may lack

foundation for admissibility, the rest of the evidence, if believed,[6] could support a factfinder's finding that the environment continued to be so hostile that Smith was entitled to consider it a constructive discharge.[7] I therefore **DENY** the motion for summary judgment on Count II's constructive discharge claim.

However, there is no evidence to support the claim that Renys subjected Smith to adverse employment action for making her complaint. Although Renys may not have done all that Smith desired, or although some managers may have been insensitive to her complaint, once Smith made her complaint the harassing co-worker never returned to the store, Smith could have continued to work thereafter (she did so for only two days), and indeed Renys urged her to return to work. Only the asserted revelation of her harassment complaint (despite assurances of confidentiality) to other Renys' employees and their resulting response ("people ignored her, or gave her dirty looks") would qualify as an adverse employment action in response to her complaint. But that breach of confidentiality is insufficient to meet the objective standard for a qualifying adverse employment action, that it be materially adverse to a reasonable employee or job applicant, an action that could well dissuade a reasonable worker from making or supporting a charge of discrimination. Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, No. 13-1587, 2014 WL 593673 *5-*6 (1st Cir. February 18, 2014) (conduct that falls outside

---

[6] There is also contrary evidence regarding some managers' support of Smith, but for purposes of the motion, I construe all facts and inferences in Smith's favor.
[7] "Working conditions so intolerable that a reasonable person would feel compelled to resign." them. Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 25 (1st Cir. 2013)(quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004))**.**

5

the scope of anti-discrimination laws includes "'petty slights or minor annoyances that often take place at work'") (quoting <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)).

I therefore **GRANT** the defendant's motion for summary judgment on Count III's claim of a Whistleblower violation.

**SO ORDERED.**

**DATED THIS 21ST DAY OF MARCH, 2014**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**